Filed Jan. 7, 1887.

---

No. 13,364.

DUNCAN v. SHENK.

ELECTIONS.—*Laws to be Liberally Construed.*—Election laws are to be liberally construed when necessary to reach a correct result, and their provisions treated as directory rather than as mandatory.

SAME.— *Change of Precincts.*— *Statute Construed.*—Section 4687, R. S. 1881, prohibiting a change in the boundaries of election precincts by the county commissioners after the June term of the board next preceding any election, does not apply where the readjustment of a precinct becomes necessary on account of a change in the boundary line between townships.

SAME.—*Change of Township Boundary.—Right to Vote.*—Where the boundary line of a township is changed by the county commissioners, at their December term next preceding the April election, by the addition of territory taken from an adjoining township, the persons residing upon such territory, being otherwise legal voters, are entitled to vote at such election in the precinct into which they have been cast.

From the Howard Circuit Court.

*M. Bell, W. C. Purdum* and *C. N. Pollard,* for appellant.

*J. O'Brien, C. C. Shirley, J. C. Blacklidge, W. E. Blacklidge* and *B. C. H. Moon,* for appellee.

NIBLACK, J.—This was a proceeding before the board of commissioners of the county of Howard to contest the validity of the election of a township trustee.

John E. Duncan, the contestor, claiming to be a competent elector, and entitled to vote at an election for township

trustee, complained that at the June term, 1884, of the said board of commissioners of the county of Howard, said board established two precincts, known as No. 1 and No. 2 respectively, in the township of Taylor, in said county, giving the boundaries of each of such precincts; that, on the 16th day of December, 1885, said board, by an order entered for that purpose, unlawfully assumed to change the boundaries of said precincts, specifically describing such boundaries as so changed, by which it was made to appear that the second precinct had been enlarged by the inclusion of territory not originally embraced in either one of such precincts; that, on the 5th day of April, 1886, an election was held in said township of Taylor for the purpose, amongst other things, of electing a trustee for that township; that he, the contestor, was a candidate for said office of township trustee, and was voted for as such at both precincts of said township, receiving in all two hundred and two legal votes for that office; that Daniel Shenk, the contestee, was also a candidate at the same election and for the same office, and was likewise voted for at both precincts, receiving therefor only in the aggregate one hundred and eighty-three legal votes; that the whole number of votes cast at said election was four hundred and sixty; that, by reason of the pretended and unlawful changes in the boundaries of the precincts in question, seventy-five illegal votes were cast and counted at said election for township trustee; that of the number of illegal votes so cast and counted, he, the contestor, received twenty-five, and the contestee received the remaining fifty, thus giving him an apparent majority of the votes cast at such election; that upon this apparent majority the contestee was thereafter declared to have been elected trustee of said township of Taylor.

The proceedings had upon this complaint before the board of commissioners resulted in a judgment in favor of the contestee.

Upon an appeal to the circuit court, and after a demurrer

to the complaint had been overruled, the contestee answered that the only change made in the boundaries of the election precincts referred to in the complaint resulted from a change in the boundary line between the townships of Taylor and Union, of said county of Howard; that, on said 16th day of December, 1885, the board of commissioners of said county of Howard, on the petition of divers persons interested, ordered the boundary line between said townships to be changed by taking a strip of six sections of land from Union township and attaching it to Taylor township; that said strip of land was at the same time, by a like order of said board, added to and made a part of precinct No. 2 of said latter township, of which notice was duly given by publication in a proper newspaper more than one month prior to said 5th day of April, 1886.

This answer was held to be sufficient upon demurrer, and the contestor declining to plead further, final judgment was rendered against him for want of a reply.

Error and cross error are both assigned upon the proceedings below.

The principal question intended to be presented by this appeal, and which we will assume is fairly presented, is, what effect, if any, did the change made in the boundaries and territory of precinct No. 2 have upon the legality of the election held in April, 1886, at which the contestor and contestee were voted for as candidates for township trustee?

The contestor claims that the addition of the six sections of land to precinct No. 2, at the time it was made, was in contravention of the provisions of section 4687, R. S. 1881, and was, for that reason, null and void; that, in consequence, none of the persons residing upon any of the territory so unlawfully added to precinct No. 2 were entitled to vote in such precinct; that seventy-five of the votes given at the election in question were cast by persons residing upon such unlawfully added territory, and that hence such seventy-five votes were illegal votes.

Section 4687, R. S. 1881, referred to, provides that "The county commissioners of any county may change the boundaries of any precinct within such county, or divide any precinct into two or more precincts, or consolidate two or more precincts into one, or change any place of holding elections, whenever public convenience or the public good may require it: *Provided,* That no such change, division, or consolidation shall be made after the June term of said commissioners next preceding any election; *And Provided, further,* That no such change, division, or consolidation shall be valid without giving due notice, at least one month before any election, either by publication in the newspaper having the largest circulation in such county, or by posters put up in four of the most public places in each precinct."

This section must be construed in connection with other sections of the statute bearing on the same subject to which it relates.

Section 5987, R. S. 1881, directs that "The board of commissioners in each county in this State may lay off and divide the same into any number of townships that the convenience of the citizens may require, accurately defining the boundaries thereof, and may, from time to time, make such alterations in the number, names, and boundaries of such townships as they may deem proper."

Our election laws were enacted upon the evident theory that every qualified voter of the State is entitled to vote at some precinct or voting place at every election, except when restrained by some provision of our State Constitution.

This is well illustrated by the provisions of section 4686, R. S. 1881, which requires the commissioners of the several counties to designate suitable places for holding elections in each township, and to define precincts, or voting districts, by definite boundaries, and which further provides that where only one place of voting in a township is designated, such township shall constitute a precinct, or voting district, and prescribes other regulations for the convenience of voters.

The fair inference from all the provisions of the election laws having any relation to the subject is, that, primarily, each township constitutes an election precinct, with the power resting in the proper board of commissioners to change the boundaries of such township at any time, and that when a township is divided into two or more election precincts, the precincts are mere subdivisions of such township, intended to embrace, and presumably embracing, all the territory within its limits.

It is also a well recognized principle of statutory construction, that election laws are to be liberally construed when necessary to reach a substantially correct result, and to that end their provisions will, to every reasonable extent, be treated as directory rather than mandatory.

McCrary, on the American Law of Elections, at section 200, states some general principles which ought to be observed in construing the election laws of the several States, and then concludes as follows: "If we keep in view these general principles, and bear in mind that irregularities are generally to be disregarded, unless the statute expressly declares that they shall be fatal to the election, or unless they are such in themselves as to change or render doubtful the result, we shall find no great difficulty in determining each case as it arises under the various statutes of the several States." See, also, *City of Lafayette* v. *State, ex rel.*, 69 Ind. 218 ; *West* v. *Ross*, 53 Mo. 350; *Jones* v. *State*, 1 Kan. 273; *Gilleland* v. *Schuyler*, 9 Kan. 569.

Having in view the right of every qualified voter of the State to cast his vote at some designated and appropriate voting place, at every election held in the township or precinct in which he may reside, we feel it to be our duty to hold that the provisions of section 4687, above set out, do not apply to cases like the one before us, in which the readjustment of an election precinct becomes a necessity on account of a change in the boundary line between townships.

Any other construction would enable the boards of com-

missioners of the several counties of the State to practically disfranchise large bodies of voters, by inadvertently, or otherwise, changing the boundaries of townships at other times than at the June terms of such boards.

The judgment is affirmed, with costs.

Filed Jan. 4, 1887.